U. S. F. & G. Co. *v.* Employers Mutual Casualty Co.

S 5-2643                                    355 S. W. 2d 613

Opinion delivered April 2, 1962.

*Wendell O. Epperson,* for appellant.

*William C. Gilliam* and *Gannaway & Gannaway,* for appellee.

Carleton Harris, Chief Justice. This litigation results from an automobile collision between a vehicle driven by Leo Eason, and a vehicle owned by his son, Thomas Franklin Eason, and driven by his daughter-in-law, Nancy Eason, the collision occurring south of Malvern. Mrs. Paul Irvin was riding in the automobile with Nancy Eason. Mrs. Irvin subsequently instituted suit against both Nancy Eason and Leo Eason, seeking damages for injuries allegedly sustained. Mrs. Eason answered, denying the allegations of the complaint, and filed her "cross-claim" against Leo Eason alleging that Leo Eason was negligent and that "if it should be determined that she was negligent in any degree, then, in that event, that her negligence, if any, be prorated along with the negligence of Leo Eason, and that she be awarded judgment against Leo Eason based on the

degree of his negligence.'' Leo Eason likewise answered denying any negligence, and also filed his ''cross-claim'' against Nancy Eason, asserting ''that if it should be determined that he was negligent in any degree, then and in that event that his negligence, if any, be prorated along with the negligence of Mrs. Nancy Eason and that he be awarded judgment against Mrs. Nancy Eason based on the degree of her negligence, * * *.'' On trial, the jury found Mr. Eason fifty per cent negligent, and Mrs. Eason fifty per cent negligent, and rendered judgment against Leo Eason and Nancy Eason, jointly and severally, in the amount of $5,000. The judgment further provided ''that the party paying same shall have and hereby is awarded a judgment against the other defendant in the amount of one-half of such sums as shall be paid in order to satisfy the aforesaid judgment in full; for all of which execution may issue.'' Subsequently, Mrs. Irvin instituted suit against the United States Fidelity & Guaranty Company, appellant herein, and alleged, ''That execution issued against Leo Eason and Mrs. Nancy Eason by the Circuit Court of Hot Spring County, Arkansas, and return by the Sheriff of Hot Spring County indicates that Leo Eason and Mrs. Nancy Eason have no property upon which to levy.'' It was further alleged that the insurance company referred to had issued a policy of insurance covering the automobile driven by Leo Eason, and judgment was sought against United States Fidelity & Guaranty Company for the $5,000 plus interest, penalty, and attorney's fee. As a result of the filing of the suit, the company paid Mrs. Irvin $5,000 in full satisfaction of the judgment, and thereafter, sought contribution from Employers' Mutual Casualty Company, appellee herein, alleging that this latter company had liability coverage on the automobile driven and operated by Mrs. Nancy Eason. Employers' Mutual answered, admitting that the company had issued a policy, but asserting that such policy excluded injuries sustained by an employee of Thomas Franklin Eason or his wife, Nancy Eason; that at the time the injury was

sustained, Mrs. Irvin was a domestic employee of Mr. and Mrs. Thomas Franklin Eason, and was engaged within the scope of her employment when the collision occurred. On trial, the court found that Mrs. Irvin was a domestic employee of the insured; that the policy excluded injuries to such an employee, arising out of and in the course of employment, and entered its judgment denying contribution. From such judgment, comes this appeal.

Appellee had issued its policy to T. Franklin Eason, d/b/a Eason Mobil Station. The policy, *inter alia,* provided under Coverage "A", bodily injury liability coverage on behalf of the insured, and under division one of Coverage "C", provided "To or for each person who sustains bodily injury, sickness or disease, caused by accident, while in or on, or while entering into or alighting from an automobile which is being used by the named insured or with his permission, if insurance for such use is afforded under coverage "A". Subsection (d) under "Exclusions" provides that the policy does not apply "under coverage 'A' and division I of coverage 'C' to bodily injury to, or sickness, disease, or death of any employee of the insured arising out of and in the course of his employment by the insured, * * *." Subsequently, an endorsement was placed on the policy to provide coverage for the use of other automobiles owned by the insured, and this endorsement was issued to T. Franklin Eason as an individual. Under this endorsement, the term "insured" was defined as the holder of the policy and his spouse (if a resident of the same household). Liability coverage is further provided for a chauffeur or domestic servant of the insured.

Mrs. Irvin was employed by Mr. and Mrs. Franklin Eason as a domestic servant, helping with the housework and looking after three small children. Appellant vigorously argues that the proof does not reflect that Mrs. Irvin was engaged in domestic duties or acting within the scope of her employment at the time the

injury was sustained. It appears from the testimony that at the time of the collision, Mrs. Eason was driving to town, with Mrs. Irvin and her daughter, and Mrs. Eason's three children in the car. The purpose of the trip actually seems to have been two-fold, *i.e.,* Mrs. Irvin was to help Mrs. Eason with the laundry, or look after the children while the latter was engaged at the launder-mat, following which Mrs. Eason and her daughter planned to attend a show. Mrs. Eason's testimony was to the effect that Mrs. Irvin was to look after the children while she (Mrs. Eason) did the laundry, and that Mrs. Irvin and her daughter were then going to the show. She testified that the matter of Mrs. Irvin taking care of the children had not been discussed; that at times when she took the children to town, Mrs. Irvin would look after them, and at other times, her mother-in-law would look after them. From the testimony:

"Q. But your mother-in-law wasn't there on this occasion?

A. Yes, sir, and it was taken for granted that she would take care of them.

Q. It was taken for granted that while you did the laundry Mrs. Irvin would take care of the children?

A. Yes, it hadn't been discussed, but I'm sure it would have been.

Q. That was the purpose that you were going to come to town?

A. Well, there were two purposes, yes, sir.

Q. It was a dual purpose, you wanted to have your laundry done and she was going to take care of the children and then Mrs. Irvin and her daughter were going to the show, isn't that right?

A. Yes."

Mrs. Irvin was much more definite in her testimony. From the record:

"Q. Mrs. Irvin, you had been employed by Mrs. Eason since August of '59, is that correct?

A. That's right, 17th of August.

Q. 17th of August, 1959?

A. Yes.

Q. And on this day that you all were coming into town, Mrs. Irvin, you were coming in to do washing, is that right?

A. We were going to wash some diapers for the babies.

Q. And you and your daughter were also coming into town?

A. That's right. * * *

Q. But, now, on this day this happened were you planning on going to the show, you and your daughter?

A. After the laundry was done, yes.

Q. But you were planning on going to the show to celebrate her birthday, is that right?

A. That's right, because we knew that we wouldn't get to come into town on Tuesday night.

Q. So you were going to do that on Saturday when you came in?

A. After we'd done the laundry."

Janet Irvin, daughter of Mrs. Irvin, testified likewise that she and her mother were only going to the show after the laundering was completed. We are of the opinion that whether Mrs. Irvin was acting within the scope of her employment at the time of the collision,[1] was a

---

[1] This question was mentioned by the Circuit Court in its findings as follows: "From the record in the case which was submitted to a jury it appears that the Court in effect found Mrs. Irvin an employee of the defendant, Nancy Eason. This is indicated from the Court's refusal to submit the question of Mrs. Irvin's being a guest to the jury. After carefully reading the record the Court cannot see that an error was made in this decision."

question of fact, and we are unable to say that the trial court's determination was erroneous, or not supported by substantial evidence.

The endorsement can be of no aid to appellant, for the portions mentioned in appellant's argument. provide no bodily injury benefits to the insured, chauffeur or domestic servant; rather, only liability coverage is provided when they are operating an automobile covered in the endorsement, *i.e.*, protection is afforded for injury caused to a third party. It then follows, as found by the Circuit Court:

"Under the exclusion of the subject policy the following pertinent language appears: 'This policy does not apply . . . (subsection "d") under coverage A and division 1 of coverage C, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured; . . .'

It might well be that this clause is inserted by the insurer with the intention that it exclude only the employees of Franklin Eason doing business as a service station operator and such employees being engaged in the furtherance of the service station business; however, the Court can find nothing in the policy limiting this exclusion to garage employees, and in the absence of this, the Court must find that the policy of insurance affords no protection to Nancy Eason against liability to an employee for injuries sustained."

Affirmed.